{¶ 1} Appellants, Richard Mellino ("Mellino") and Mellino Consulting, Inc. ("MCI"), appeal the common pleas court's ruling that granted the motion to dismiss their complaint, which was filed by appellees, Synchronous Management Sarasota, Inc. ("SMS"), and its president, Victor Lippa ("Lippa"). Upon review of the record and arguments of the parties, we reverse and remand.
 {¶ 2} Appellant MCI and appellee SMS recently terminated a business contract, pursuant to which MCI allegedly provided consulting services to one of SMS' major clients, Parker Hannifin Corporation. The contract was specifically between MCI and SMS and contained a non-compete provision restricting MCI from certain endeavors on termination of the business relationship. After the MCI-SMS contract was terminated, Mellino, who was not a signed party to the contract, asserted that SMS improperly used the non-compete provision of the MCI-SMS contract by threatening legal action in order to prevent Parker Hannifin from hiring Mellino. Mellino claimed he sustained damages from this stifled employment opportunity.
 {¶ 3} As a result, on August 10, 2005, appellants filed a complaint against appellees for tortious interference with business relations. Appellants also filed a motion for a temporary restraining order. An agreed temporary injunction was filed on September 29, 2005. On October 18, 2005, appellees filed a motion to dismiss on jurisdictional grounds because both appellees were non-residents of the state of Ohio. On November 30, 2005, appellees filed a motion for protective orders to prevent further discovery, which was granted by the trial court on January 5, 2006 for the reason that the motion was unopposed. On January 17, 2006, appellants filed a motion for reconsideration of the trial court's decision granting the protective orders, arguing that the protective orders were opposed, and appellants filed their brief in opposition to the original motion. On March 1, 2006, the trial court granted appellees' motion to dismiss appellants' complaint for lack of personal jurisdiction. The trial court did not rule on appellants' motion for reconsideration.
 {¶ 4} Appellants appeal the trial court's dismissal, asserting two assignments of error.
 {¶ 5} "I. The trial court erred in dismissing Appellant's complaint for lack of personal jurisdiction."
 {¶ 6} Appellants argue that the trial court erred in dismissing their complaint on the basis that the trial court lacked personal jurisdiction over appellees. The substance of their argument is that they are entitled to an evidentiary hearing.
 {¶ 7} We review a trial court's granting of a motion to dismiss for lack of personal jurisdiction de novo. Ricker v. Fraza/Forklifts ofDetroit, 160 Ohio App.3d 634, 2005-Ohio-1945.
 {¶ 8} "A plaintiff has the burden of establishing the trial court has personal jurisdiction over a defendant once the defendant timely challenges the court's jurisdiction. Giachetti v. Holmes (1984),14 Ohio App.3d 306, 308, 14 OBR 371, 373, 471 N.E.2d 165, 167-168; LB.Cleveland, Inc. v. Metal Purchasing Co., Inc. (Feb. 15, 1990), Cuyahoga App. No. 58163, unreported. Where the trial court determines jurisdiction without an evidentiary hearing, as in the present case, the trial court must (1) view the allegations in the pleadings and the documentary evidence in a light most favorable to the plaintiff, and (2) resolve all reasonable competing inferences in favor of the plaintiff.Giachetti, supra, 14 Ohio App.3d at 307, 14 OBR at 372,471 N.E.2d at 166-168. In such a case, the plaintiff need only make a prima facie showing of personal jurisdiction to overcome a motion to dismiss. Id."Pharmed Corp. v. Biologics, Inc. (1994), 97 Ohio App.3d 477, 480,646 N.E.2d 1167.
 {¶ 9} In clarifying the standard in determining personal jurisdiction over a foreign corporation, the Ohio Supreme Court has stated the following:
 {¶ 10} "When determining whether a state court has personal jurisdiction over a foreign corporation the court is obligated to engage in a two-step analysis. First, the court must determine whether the state's long-arm' statute and applicable civil rule would deprive the defendant of the right to due process of law pursuant to theFourteenth Amendment to the United States Constitution. Fallang v. Hickey (1988),40 Ohio St.3d 106, 532 N.E.2d 117; Kentucky Oaks Mall Co. v. Mitchell'sFormal Wear, Inc. (1990), 53 Ohio St.3d 73, 559 N.E.2d 477." U.S. SprintCommunications Co., Ltd. Partnership v. Mr. K's Foods, Inc. (1994),68 Ohio St.3d 181, 184-185, 624 N.E.2d 1048, 1051-1052.
 {¶ 11} R.C. 2307.382 (Ohio's long-arm statute) provides the following:
 {¶ 12} "(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
 {¶ 13} "(1) Transacting any business in this state;
 {¶ 14} "(2) Contracting to supply services or goods in this state;
 {¶ 15} "(3) Causing tortious injury by an act or omission in this state;
 {¶ 16} "(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
 {¶ 17} "* * *
 {¶ 18} "(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state * * *."
 {¶ 19} Additionally, Civ.R. 4.3 provides in pertinent part:
 {¶ 20} "Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. `Person' includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:
 {¶ 21} "(1) Transacting any business in this state;
 {¶ 22} "(2) Contracting to supply services or goods in this state;
 {¶ 23} "* * *
 {¶ 24} "(4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
 {¶ 25} "* * *
 {¶ 26} "(9) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person to be served might reasonably have expected that some person would be injured by the act in this state; * * *."
 {¶ 27} In attempting to satisfy the applicable statute and civil rule mentioned above, appellants' complaint attests to the following:
 {¶ 28} "3. Synchronous Management Sarasota, Inc. ("SMS") is a Florida corporation. SMS provides procurement and consulting services to businesses. SMS conducts systematic, persistent, and substantial business with Ohio, having representatives in this state and one of its largest accounts, Parker Hannifin Corporation, in Cuyahoga County, Ohio. SMS derives substantial revenue from that relationship and those contacts with Ohio.
 {¶ 29} "* * *
 {¶ 30} "12. As outlined in Paragraph 3 above, this Court has general personal jurisdiction over Defendants as a result of Defendants' ongoing, regular, persistent and substantial contacts with Ohio and the derivation of substantial revenue from those contacts. Additionally, * * * Defendants or either of them caused tortious injury in this state to Plaintiffs or either of them, and/or caused tortious injury in this state to Plaintiffs or either of them with the purpose of injuring Plaintiffs or either of them and with the reasonable expectation that tortious injury would occur to the Plaintiffs or either of them in this state."
 {¶ 31} Appellants' complaint was supported by Mellino's affidavit, which stated in pertinent part:
 {¶ 32} "The defendants have threatened me and Parker Hannifin [both residents of Ohio] if Parker allows me to go to work for them. These threats have included a threat to sue both me and Parker."
 {¶ 33} The record indicates that appellees refute many of the assertions offered by appellants; however, appellees' blanket denials do not change the court's obligation to make all reasonable inferences in favor of the nonmoving party. Mitchell v. Lawson Milk Co. (1998),40 Ohio St.3d 190, 532 N.E.2d 753. The allegations articulated in appellants' complaint and supporting affidavit sufficiently assert conduct by appellees to satisfy Ohio statutes and civil rules enough to survive appellees' motion to dismiss.
 {¶ 34} "The second step of our two-step analysis requires us to examine whether the exercise of personal jurisdiction here comports with due process of law under the Fourteenth Amendment to the United States Constitution.
 {¶ 35} "The United States Supreme Court has held that in order for a state court to subject a foreign corporation to a judgment inpersonam, the corporation must `have certain minimum contacts with [the state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." * * *' (Citations omitted.) Internatl. Shoe Co. v. Washington (1945),326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102. * * *. 
 {¶ 36} "Under the International Shoe doctrine, a nonresident corporation submits to a state's personal jurisdiction when the activities of the company within the state are systematic and continuous. International Shoe, 326 U.S. at 319, 66 S.Ct. at 159,90 L.Ed. at 103. And while the casual presence of a corporate agent or a single or isolated act is not enough, `other such acts, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit.' Id. `Thus where the defendant "deliberately" has engaged in significant activities within a State * * *, he manifestly has availed himself to the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.' Burger King Corp., supra, 471 U.S. at 475-476,105 S.Ct. at 2184, 85 L.Ed.2d at 543. The Ohio Supreme Court adopted the basic principle of International Shoe * * * stating due process is satisfied when `a foreign corporation has certain minimum contacts with Ohio such that it is fair that a defendant defend a suit brought in Ohio and that substantial justice is done.'" U.S. Sprint CommunicationsCo., supra, 68 Ohio St.3d at 186-187, 624 N.E.2d at 1053.
 {¶ 37} Mellino filed a second affidavit with the court in support of appellants' jurisdictional arguments, which stated in pertinent part:
 {¶ 38} "2. [Lippa] and [SMS] have contacts with Parker Hannifin in Ohio as well as other Ohio individuals or companies.
 {¶ 39} "3. [Lippa] has regularly been to Ohio regarding business with Parker Hannifin.
 {¶ 40} "4. [Lippa] has regularly been to Ohio on behalf of [SMS].
 {¶ 41} "5. I met with [Lippa] twice in Ohio to interview for and enter my company [MCI] into a contract with [SMS].
 {¶ 42} "6. Telephone calls were made, correspondence was issued, payments were made and transmitted, and extensive amounts of activity occurred between [SMS] and Parker Hannifin in relation to [MCI]'s contract with [SMS]."
 {¶ 43} Viewing the record in a light most favorable to appellants, it is apparent that they have at least made a prima facie showing of .minimum contacts with the state of Ohio that the maintenance of their civil action would not offend "traditional notions of fair play and substantial justice."
 {¶ 44} Based on the pleadings and evidence before this court, we hold that appellants have sufficiently made a prima facie showing of personal jurisdiction to survive appellee's motion to dismiss. Appellants' first assignment of error is sustained.
 {¶ 45} "II. The trial court erred in granting a protective order to prevent discovery on the issue of personal jurisdiction without making an independent determination of good cause."
 {¶ 46} Appellants argue that the trial court committed error in granting a protective order without making an independent determination of good cause. Under Ohio law, it is well established that the trial court is vested with broad discretion when it comes to matters of discovery, and the "standard of review for a trial court's discretion in a discovery matter is whether the court abused its discretion."Mauzy v. Kelly Services, Inc., 75 Ohio St.3d 578, 1996-Ohio-265,664 N.E.2d 1272. Absent a clear abuse of that discretion, the lower court's decision should not be reversed. Mobberly v. Hendricks (1994),98 Ohio App.3d 839, 845, 649 N.E.2d 1247.
 {¶ 47} Although unusual, appellate courts will reverse a discovery order "when the trial court has erroneously denied or limited discovery." 8 Wright, Miller Marcus, Federal Practice Procedure (2d Ed. 1994), 92, Section 2006. "[A]n appellate court will reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights." Rossman v. Rossman (1975),47 Ohio App.2d 103, 110, 352 N.E.2d 149. For a party seeking to overturn the lower court's discovery ruling, the aggrieved party must show that the lower court's actions were "unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 5 Ohio B. 481,450 N.E.2d 1140.
 {¶ 48} Appellees' protective order was granted pursuant to Civ.R. 26(C), which reads in pertinent part:
 {¶ 49} "Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. * * *." (Emphasis added.)
 {¶ 50} This civil rule clearly directs a trial court to base any granting of a protective order on a showing of "good cause." In this case, the trial court did not articulate any rationale for its ruling other than that the motion for protective order was unopposed.[1] We cannot find such a reason to be a showing of "good cause," thus we sustain the second assignment of error and remand the discovery matters for further proceedings in accordance with this opinion.
 {¶ 51} We conclude that appellants have sufficiently made a prima facie showing of personal jurisdiction, thus the trial court erred in granting appellees' motion to dismiss. The trial court should permit the parties to engage in limited discovery and may hold a hearing to determine the issue of personal jurisdiction. This opinion does not rule as to whether appellants will ultimately carry their burden of proving jurisdiction by a preponderance of the evidence; therefore, we remand this matter for further proceedings in accordance with this opinion.
It is ordered that appellants recover from appellees costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, J., CONCURS;
PATRICIA ANN BLACKMON, J., CONCURS IN JUDGMENT ONLY.
[1] "Defendants [SMS] and [Lippa]'s motion for protective order (filed 11/30/2005) is unopposed and granted. The protective order will remain in effect until the court rules on the pending motion to dismiss." J.E. 1/5/2006.