JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of the Cuyahoga County Common Pleas Court that dismissed a complaint filed by plaintiff-appellant Alpha Communications (Alpha) for payment of consulting fees against defendant-appellee ANS Connect (ANS), a Georgia corporation, for lack of personal jurisdiction. After a review of the record and the plethora of case law interpreting Ohio's long-arm statute, R.C. 2307.382, and its accompanying procedural rule, Civ. R. 4.3(A)(1), we affirm.
 {¶ 2} Alpha, a consulting firm located in Cuyahoga County, and ANS entered into a contract for consulting services. Alpha alleges that pursuant to this contract it advised ANS, a vendor, in its work of providing technological equipment to Georgia school districts under the "e-rate" program.[1] It allegedly advised ANS regarding such matters as the grant application process in the "e-rate" program and its work of providing technological equipment to the school districts. Alpha also allegedly gave advice on how to obtain contracts with Georgia school districts.
 {¶ 3} Alpha, after allegedly completing its work under the contract, invoiced ANS, which refused to pay. On May 15, 2007, Alpha filed a complaint against ANS, seeking $189,898.94 for services rendered. On June 26, 2007, ANS filed a motion to *Page 4 
dismiss on jurisdictional grounds, contending that as a Georgia corporation it had no contacts whatsoever with the State of Ohio. On July 17, 2007, the trial court converted the motion to dismiss for lack of personal jurisdiction into a motion for summary judgment; the court then granted the motion. In the same journal entry, the trial court denied a second motion to dismiss on grounds of lack of standing and res judicata, also filed by ANS on June 26, 2007.
 {¶ 4} Alpha appeals the trial court's order of dismissal and raises the following sole assignment of error.
 "THE TRIAL COURT ERRED WHEN IT DISSMISSED [SIC] APPELLANT'S COMPLAINT FOR LACK OF JURISDICTION."
 {¶ 5} Alpha contends that the allegations of its complaint, including the statement that the work was completed in Cleveland, Ohio, is sufficient to establish that ANS was transacting business in Ohio. ANS argues that the complaint and the affidavit in opposition to its motion to dismiss are insufficient to establish a prima facie case for personal jurisdiction over ANS, and the trial court's ruling dismissing the action should be affirmed.
 {¶ 6} At the outset, as Alpha properly argues, there is no provision in Civ. R. 12(B) to convert any motion other than one brought under Civ. R. 12(B)(6) into a motion for summary judgment. As noted by this court in Spang v. Rickbrodt (1991), Cuyahoga App. No. 61353, 1991 Ohio App. LEXIS 5089, "[a] motion to dismiss for lack of jurisdiction terminates the action other than on the merits whereas a motion for *Page 5 
summary judgment terminates the action on the merits. See Young v.Greater Cleveland Regional Transit Auth. (Dec. 18, 1986), Cuyahoga App. No. 52041."
 {¶ 7} In stating so, we also note that Civ. R. 41(B)(4) states in relevant part that "[a] dismissal * * * for lack of jurisdiction over the person * * * shall operate as a failure otherwise than on the merits." Yet the appeal herein was proper as the Supreme Court of Ohio recently clarified that a dismissal for lack of personal jurisdiction, which prevents refiling in the same trial court, is a final appealable order.Natl. City Commercial Capital Corp. v. AAAA At Your Serv., Inc.,114 Ohio St.3d 82, 2007-Ohio-2942.
 {¶ 8} However, as observed by this court in Marvel Consultants, Inc.v. Friedman and Feigler, Cuyahoga App. No. 82637, 2003-Ohio-5249, "[a]n Ohio court has the ability to determine its own jurisdiction by considering any pertinent materials attached to a motion questioning such jurisdiction without converting it into a motion for summary judgment." Id. at ¶ 5, citing Southgate Dev. Corp. v. Columbia GasTransm. Corp., 48 Ohio St.2d 211.
 {¶ 9} Appellate review of a trial court's granting of a motion to dismiss for lack of personal jurisdiction is de novo. MellinoConsulting, Inc. v. Synchronous Mgt. Sarasota, Inc., Cuyahoga App. No. 87894, 2007-Ohio-541, at ¶ 8.
 {¶ 10} This court commented on the standard in reviewing a challenge to jurisdiction without an evidentiary hearing, such as the case here:
 "A plaintiff has the burden of establishing the trial court has personal jurisdiction over a defendant once the defendant timely *Page 6 challenges the court's jurisdiction. Where the trial court determines jurisdiction without an evidentiary hearing, as in the present case, the trial court must (1) view the allegations in the pleadings and the documentary evidence in a light most favorable to the plaintiff, and (2) resolve all reasonable competing inferences in favor of the plaintiff. In such a case, the plaintiff need only make a prima facie showing of personal jurisdiction to overcome a motion to dismiss." Pharmed Corp. v. Biologics, Inc. (1994), 97 Ohio App. 3d 477, 480. (Internal citations omitted.)
 {¶ 11} In the case sub judice, Alpha submits that the following pertinent language of Ohio's long-arm statute, R.C. 2307.382(A)(1) applies herein:
 "(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
 " (1) Transacting any business in this state[.]"
 {¶ 12} Similarly, Alpha submits that the accompanying procedural rule, Civ. R. 4.3(A), as stated in pertinent part, applies herein:
 "Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state. `Person' includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:
 "(1) Transacting any business in this state[.]"
 {¶ 13} In opposing the motion, with the affidavit of Nathaniel Hawthorne (Hawthorne), Alpha contends that its complaint and affidavit satisfy the requirement *Page 7 
for personal jurisdiction over ANS pursuant to R.C. 2307.382, and service under accompanying procedural rule, Civ. R. 4.3(A)(1). Alpha contends that its contract with ANS provides that all services would be, and were in fact, provided in Cleveland, Ohio, and that all payments were payable to Alpha's office in Cleveland, Ohio. According to Alpha, the contract was signed by an ANS representative and sent to Ohio via facsimile in order for Alpha to execute it.
 {¶ 14} The affidavit also states that all negotiations took place between ANS, presumably by an ANS representative, and Hawthorne on behalf of Alpha, over the telephone. The affidavit states that the contract created continuing duties upon Alpha which were performed by Alpha in its Cleveland office. It states that ANS sent work to the Alpha office by facsimile, U.S. mail or e-mail, and that Alpha returned the completed work product to ANS by the same means. Additionally, the Hawthorne affidavit states that "Alpha was asked to provide consulting services to ANS Connect." Importantly, however, it does not state that ANS asked Alpha to provide its consulting services to ANS.
 {¶ 15} The documentary evidence offered by ANS in support of its motion to dismiss consists of the affidavits of an officer of ANS, who was a signatory to the contract in question and a former sales representative for Alpha in Georgia. A third affidavit in support of the motion to dismiss cannot be considered as it was not signed, nor did it include a jurat.
 {¶ 16} The gist of the affidavits in support of the motion to dismiss is that Alpha directed its activities to Georgia by hiring sales representatives who actively solicited *Page 8 
business by offering Alpha's consulting services to Georgia Telecommunication Enterprises, including ANS. According to the affidavits, ANS did not initiate the contact between the parties, and the ANS representative signed the contract faxed to Ohio after it was approached by Alpha's representative in Georgia.
 {¶ 17} The Supreme Court of Ohio has held that a court must engage in a two-step analysis in deciding if an Ohio trial court has jurisdiction over a nonresident entity:
 "When determining whether a state court has personal jurisdiction over a foreign corporation the court is obligated to engage in a two-step analysis. First, the court must determine whether the state's `long-arm' statute and applicable civil rule confer personal jurisdiction, and, if so, whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution." U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc. (1994), 68 Ohio St.3d 181, 184, 1994-Ohio-504. (Internal citations omitted.)
 {¶ 18} The Supreme Court also stated that "[b]ecause it is such a broad statement of jurisdiction, R.C. 2307.382(A)(1) has given rise to a variety of cases which `have reached their results on highly particularized fact situations, thus rendering any generalization unwarranted.' With no better guideline than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio, the court must, therefore, rely on a case-by-case-determination." Id. at 185. (Internal citation omitted.)
 {¶ 19} When reviewing pleadings and affidavits in determining a motion to dismiss challenging sufficiency of jurisdiction, it is a court's obligation to make all *Page 9 
reasonable inferences in favor of the nonmoving party, Alpha.Goldstein v. Christiansen, 70 Ohio St.3d 232, 236, 1994-Ohio-229,Giachetti v. Holmes (1984), 14 Ohio App.3d 306, 307, citing Barile v.Univ. of Virginia (1981), 2 Ohio App.3d 233, 234.
 {¶ 20} In Epic Communications, Inc. v. Progressive Communications,Inc. (N.D.Ohio 2008), 2008 U.S. Dist. LEXIS 35737, the court performed such a review in a case similar in large part to the case sub judice. Epic's sparse complaint and affidavit were similar to those of Alpha's herein. Epic also relied on Kentucky Oaks Mall Co. v. Mitchell's FormalWear, Inc. (1990), 53 Ohio St.3d 73, which Alpha actually references in its complaint.
 {¶ 21} We agree with the reasoning of the Epic decision in distinguishing Kentucky Oaks Mall from facts presented in Epic; and, for similar reasons, find Kentucky Oaks Mall inapplicable to the dispute between Alpha and ANS herein.
 "That case is distinguishable from the present case in one pivotal aspect — Epic had no say in the out-of-state business interactions between Progressive and its school districts, whereas the lessor in Kentucky Oaks did control certain aspects of the lessee defendant's retail sales business in the forum state of Ohio. Epic merely provided information to Progressive which could assist it in its business dealings with those school districts. In this Court's opinion, that mere transfer of information via telephone and fax, during the course of a short-term project, was not the type of `substantial connection' with the forum state so as to confer personal jurisdiction.
 This Court finds that even considering the pleadings and affidavits in a light most favorable to the plaintiff, the plaintiff has failed to establish a prima facie case of jurisdiction as a consequence of the inability to satisfy the requisite showing under the Ohio long-arm *Page 10 statute. Having failed in that regard, there is no need to consider whether exercise of personal jurisdiction would violate due process considerations." Epic at 12.
 {¶ 22} Just as the appellant did in Epic, Alpha places great emphasis on the allegation in its complaint that all its work was performed in Cleveland, Ohio. However, Alpha merely provided information to ANS, which could assist it in its business dealings with its Georgia school districts. Like Epic, Alpha had no say in the out-of-state business interactions between ANS and its customers.
 {¶ 23} The federal court in Epic also relied upon Burger King Corp. v.Rudzewicz (1985), 471 U.S. 462, 105 S.Ct. 2174, in finding that a contract with an out-of-state entity, standing alone, is insufficient to establish minimum contacts. We, on similar facts presented in this particular case, agree that there was no personal jurisdiction over ANS under the Ohio long-arm statute and the accompanying procedural rule. ANS did not initiate the contract, but merely forwarded matters to be reviewed by facsimile, U.S. mail or e-mail to Alpha, and Alpha returned the completed work product via the same means.
 {¶ 24} Consequently, since this court has determined that the Cuyahoga County Common Pleas Court lacks personal jurisdiction over ANS, there is no need to determine whether exercise of personal jurisdiction would violate due process considerations, the second prong of the U.S. SprintCommunications analysis.
 {¶ 25} Therefore, for the foregoing reasons, we affirm the trial court's granting of the motion of ANS to dismiss for lack of personal jurisdiction, but only as filed as a motion to dismiss and not as a converted motion for summary judgment. For reasons *Page 11 
consistent with this opinion, this case is remanded to the trial court solely for the procedural correction of the final journal entry of July 17, 2007, to reflect granting a motion to dismiss pursuant to Civ. R. 12(B)(1), (2), and (5), and Civ. R. 4.3 of the Ohio Rules of Civil Procedure.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and CHRISTINE T. MCMONAGLE, J., CONCUR
[1] The Telecommunications Act of 1996 created a program under the direction of the Federal Communications Commission, whereby the federal government would provide grant money to school districts and libraries based on what is known as the educational rate or "e-rate." Pursuant to the program, federal funds subsidize internet installation and related operating costs for school districts and libraries by virtue of their participation in the Universal Service Fund or the educational rate or "e-rate" program. ANS was one such contractor that provided technological equipment needed to connect school districts with the internet, one of the purposes of the Telecommunications Act of 1996. *Page 1